IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE E. MILES,<br>    Plaintiff<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CONSERVATION<br>AND NATURAL RESOURCES, and<br>JAY PARRISH<br>    Defendants | Civil Action No. 1:08-cv-1561<br><br>(Chief Judge Kane) |

## **MEMORANDUM**

Before the Court is Defendants' motion to dismiss Plaintiff's complaint. (Doc. No. 6.) In her complaint, Plaintiff alleges that she was discriminated against based on her age and gender and that Defendants retaliated against her for filing complaints of discrimination. Defendants argue that the complaint should be dismissed because Plaintiff's claims are barred by the statute of limitations, the Eleventh Amendment, and that Plaintiff has failed to exhaust administrative remedies. Although Plaintiff filed a brief in opposition to the motion (Doc. No. 8), she specifically disclaims any response to the motion to dismiss regarding her age discrimination claims. The motion is ripe for disposition.

**BACKGROUND**

From 1992 through June 20, 2008, Plaintiff Christine Miles was employed with the Pennsylvania Department of Conservation and Natural Resources ("DCNR") as a Geologist Manager at the Bureau of Topographic and Geologic Survey ("BTGS"). (Comp. ¶¶ 1, 3, 5-6.) In June 2001, Defendant Jay Parrish became Director of BTGS and reorganized the Bureau such that the majority of Plaintiff's duties, responsibilities, and management area were decreased. (Id.

1

¶¶ 7-8.) The two other Geologist Managers, both male, retained the bulk of their duties, responsibilities, and management area. (Id.) Shortly thereafter, in 2002, BTGS relocated to a new work building where Plaintiff and her remaining staff, most of whom were women, were given a workspace inferior to that of Plaintiff's male colleagues. A lower-ranking male Geologist Supervisor was assigned to supervise Plaintiff's former staff and he, too, was assigned a work area superior to Plaintiff's. (Id. ¶ 9.) Plaintiff voiced her objections to the reorganization, but received no response from Defendant Parrish. (Id. ¶ 10.) Defendant Parrish further hindered Plaintiff's ability to perform her duties by criticizing her and her female staff, harassing her, failing to provide her the necessary staff, and giving her poor performance evaluation ratings in February of 2002, 2004, and 2005. (Id. ¶¶ 11-12, 15, 17.) Finally, in 2008, an additional "realignment" of BTGS was announced that eliminated all of Plaintiff's staff and programs. Plaintiff was constructively discharged and resigned on May 17, 2008. (Id. ¶¶ 18-19.)

On March 25, 2003, Plaintiff filed a charge of age and gender discrimination with the Pennsylvania Human Relations Commission ("PHRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 13.) Because Defendant Parrish's allegedly discriminatory behavior continued after the filing of the initial complaint, Plaintiff filed additional charges alleging a hostile work environment at an undisclosed date. (Id. ¶ 16.) She received a right to sue letter from the EEOC on all her charges and filed this lawsuit within the permitted time-frame of receipt of the letter. (Id. ¶ 21.)

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all

factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court has recently held that while this standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level'" in order to survive a 12(b)(6) motion to dismiss. Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 127 S.Ct. 1955 (2007)).

**DISCUSSION**

Defendants argue that the complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted. Plaintiff addresses several, but not all, of Defendants' arguments in her brief in opposition. The Court will address each argument in turn beginning with Count II, against the DCNR, and continuing with Count I, against Jay Parrish.

**A. PHRA Claim**

Defendants argue that Plaintiff's PHRA claim is barred by the Eleventh Amendment. Plaintiff does not respond to this argument. The Court agrees with Defendants that the DCNR is a Commonwealth agency and therefore possesses immunity in federal court for claims under the

PHRA. Pennsylvania has not waived its immunity from suit under the PHRA in federal court, although it has for state court proceedings. Williams v. Pennsylvania State Police Bureau of Liquor Control Enforcement, 108 F.Supp.2d 460, 465 (E.D.Pa. 2000) ("Pennsylvania law is quite explicit on this point: 'Nothing contained in this subchapter shall be contrued to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.' Thus, a plaintiff may never pursue a PHRA claim against Pennsylvania or its agencies in federal court."); Dennison v. Pennsylvania Dept. of Corrections, 268 F.Supp.2d 387, 405 (M.D.Pa. 2003). The Court finds the reasoning of these opinions persuasive, and Plaintiff provides no reason to otherwise disagree.

Accordingly, Plaintiff's PHRA claim against the DCNR is dismissed. It is unnecessary to analyze whether Plaintiff has exhausted her PHRA claim.

**B. Exhaustion of Plaintiff's Title VII claim**

Defendants argue that Plaintiff's Title VII claim should be dismissed for failure to exhaust her administrative remedies because she filed her complaint with the EEOC more than 300 days after the allegedly discriminatory conduct. Conversely, Plaintiff argues that she has exhausted her administrative remedies because she filed multiple claims with the EEOC and received a right to sue letter. (Comp. ¶¶ 13, 14, 18, & 21.) She further alleges on the face of her complaint that she "has a right to sue until August 22, 2008." (Comp. ¶ 21.) However, Plaintiff does not disclose the date or the contents of any complaints with the EEOC or PHRA except for the first complaint filed on March 25, 2003.

The exhaustion requirement is not jurisdictional, but rather, is subject to equitable considerations, and therefore usually reserved for summary judgment. Robinson v. Dalton, 107

F.3d 1018, 1021-22 (3d Cir. 1997); Francis v. Mineta, 505 F.3d 266, 268 (3d Cir. 2007). The reasoning behind the exhaustion requirement is also important to note. A complaint must be first made with the EEOC so that the agency can notify the employer, conduct an investigation, and attempt conciliation between the parties before litigation commences. Anjelino v. New York Times Co., 200 F.3d 73, 93 (3d Cir. 1999). Therefore, the question of which claims are appropriate for federal litigation, that is, which claims have been properly exhausted, is answered by examination of the scope of the EEOC complaint, which in this case comprises the original EEOC complaint filed in March of 2003, and the amendments made to it thereafter. Anjelino, 200 F.3d at 93-94.

The Court does not have before it the complaints or factual evidence to determine the scope of the EEOC complaints. The Court does, however, have Plaintiff's averment that she filed not one, but several complaints with the PHRC, which were cross-filed with the EEOC, that those complaints were amended to include more incidents, and that she received right to sue letters allowing her to sue until August 22, 2008. (Doc. No. 1 ¶¶ 13, 16, 18, 21.)

The Court finds that these allegations are sufficiently well-plead to make a showing that Plaintiff is entitled to relief for her Title VII gender discrimination claims. Therefore, Defendants' motion to dismiss Plaintiff's Title VII gender claims on the basis of failure to exhaust is denied.

### C. § 1983 Gender Discrimination Claim

Defendants argue that Plaintiff's § 1983 claim against Defendant Parrish must be dismissed because it is barred by the applicable statute of limitations. Plaintiff argues that she is alleging a hostile environment claim, and therefore her claim will lie as long as at least one discriminatory action occurred within the limitations period. To support this claim, Plaintiff states that she experienced several concrete acts of discrimination, the reorganization of the Bureau that constituted an effective demotion in 2001 (Comp. ¶ 8), the move to a diminished work area in 2002 (Comp. ¶ 9), the negative performance evaluation ratings in 2002, 2004, and 2005 (Comp. ¶¶ 12, 14, 15), and the further reduction of her staff and responsibilities in April 2008 (Comp. ¶ 18). However, Plaintiff also argues that she was subjected to repeated harassing meetings and intimidation "throughout the entire period of time" she worked at BTGS under Defendant Parrish. (Comp. ¶ 17.) Defendants argue that because Plaintiff admits to filing a complaint with the EEOC in 2003, which she augmented around 2004 or 2005, she implicitly acknowledges an awareness of the allegedly discriminatory conduct as early as 2003 or 2005 at the latest. Defendants maintain that this 2005 accrual date precludes her from now filing suit for any gender discrimination claim because the two-year statute of limitations has already run.

When viewed in the light most favorable to Plaintiff, these allegations may constitute a hostile work environment that included harassing behavior continuing until Plaintiff's constructive discharge in May 2008. Having alleged at least some elements of a hostile work environment claim occurring within the limitations period, Plaintiff is entitled to proceed. (Doc. No. 1 ¶¶ 9, 11, 15, 17-18.)

It is true, as Defendants argue, that discrete acts of discrimination are not actionable if time barred, even if related to acts falling within the limitations period. National R.R. Passenger

Corp. v. Morgan, 536 U.S. 101, 110-11 (2002); O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006). However, simply because she alleges discrete acts which on their own could have been actionable but have lapsed (*e.g.*, the demotion in 2001), does not prevent her from also alleging a hostile environment claim, "using the prior discrete acts as evidence in support of her timely claim." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). In hostile environment claims, the claim is timely so long as at least one act occurs within the statute of limitations period. West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). This is because courts have applied the continuing violation doctrine to hostile environment sexual harassment claims. The continuing violation theory "is an equitable exception to the timely filing requirement" for plaintiffs who can establish that the discrimination consisted of "more than the occurrence of isolated or sporadic acts." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).

Courts use a factors test to determine whether alleged claims constitute a hostile environment, which, due to the continuing violation doctrine, is actionable so long as one event occurs within the limitations period. West, 45 F.3d at 755-56. The factors to be primarily considered, although not exclusive are: "(i) subject matter-whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence-whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." Id. at 755. The permanence factor has been stated as the most important because "continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." Cowell, 263 F.3d at 292, 295.

Once a court finds that the continuing violation theory applies, the Plaintiff need only demonstrate that one of the alleged discriminatory actions occurred within the statute of limitations period. Id. In traditional hostile environment claims, there is a need to allow evidence and allegations that extend beyond the statute of limitations period precisely because the employee does not experience one discrete act sufficient to trigger her awareness that discrimination is occurring. Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997) (agreeing with a Seventh Circuit decision holding that "a plaintiff may not base her . . . suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations"). Instead, proof of a hostile environment claim requires evidence of multiple instances that, only when taken together, support a finding of discrimination. West, 45 F.3d at 756.

Using the above factors, the Court finds that Plaintiff has alleged sufficient facts to set forth an action under the continuing violation doctrine. The analysis used by the court in West, and the third factor in the continuing violation doctrine test, suggests that the theory applies only to equitably toll those claims for which the employee has not experienced a discrete act sufficient to make her aware of the discrimination prior to the running of the statute of limitations period. A Plaintiff should not be able to cloak those actions for which the statute of limitations has run under the cover of a hostile environment claim. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-11 (2002). The continuing violations theory should only apply to "extend" the statute of limitations period for those claims for which the Plaintiff did not

have reason to know were actionable on their own. The individually actionable events alleged were the "demotion" through the reorganization in November 2001 (Comp. ¶ 8), the announcement and move to the smaller workspace with decreased staff in November 2001 to January 2002 (Comp. ¶ 9), and the realignment in April 2008 which effectively constituted a constructive discharge (Comp. ¶ 18). The realignment in April 2008, of course, falls within the limitations period and is therefore actionable in this suit.

Despite Defendant's contentions, the negative employment evaluations in themselves likely do not constitute independent employment actions sufficient to put Plaintiff on notice of discrimination, and are therefore not barred. In Colgan v. Fisher Scientific Co., the Third Circuit held that not all negative employment evaluations constitute discrete employment practices sufficient to start the running of the statute of limitations period. 935 F.2d 1407, 1421 (3d Cir. 1991). In fact, the Court was concerned that a standard requiring all negative employment evaluations to begin the statute of limitations period might cause a "perpetual and widespread problem" of employees filing protective charges. Colgan, 935 F.2d at 1421.

In addition to the negative employment evaluations, Plaintiff does allege a consistent and persistent pattern of harassing behavior at meetings, and such actions likely would not have been actionable individually. Upon consideration of the three factors, these actions, though vague, constitute a sufficient allegation of a hostile work environment claim. Because these actions continued "until her constructive discharge" (Comp. ¶ 17), Plaintiff alleges that at least some events occurred within the limitations period. This allegation allows the entire hostile work environment claim to be actionable, dating back to the time the last prior negative employment action occurred to put her on notice of discrimination.

Therefore, the Court finds that the statute of limitations period has tolled on the initial adverse employment actions of the relocation to the new office in early 2002 and the demotion in 2001. The Court also finds that Plaintiff has adequately alleged a hostile work environment claim through her allegations of the demeaning behavior and the harassing conduct that occurred at meetings throughout the period of her employment. Plaintiff's hostile environment claim beginning after her demotion in 2002 and continuing through the most recent staff-cut that allegedly occurred in April 2008 is actionable.

Plaintiff's § 1983 gender discrimination claim is dismissed to the extent it includes claims occurring prior to 2002, but the hostile environment claim beginning after February 2002, continuing up through and including the constructive discharge, is not dismissed.

**D. Age Discrimination claims**

Defendants next challenge Plaintiff's ability to bring a § 1983 age discrimination claim in light of the comprehensive administrative remedies for age discrimination provided for under the Age Discrimination in Employment Act ("ADEA"). Plaintiff does not respond to this argument nor to the argument that an age discrimination claim cannot be brought through Title VII.

Although the Third Circuit has not explicitly ruled on the issue of whether age discrimination claims may be brought through § 1983, several other circuits have ruled that the ADEA's comprehensive remedial scheme preempts other remedies for age discrimination. See, e.g., Lafleur v. Texas Dep't of Health, 126 F.3d 758, 760 (5th Cir. 1997); Migneault v. Peck, 158 F.3d 1131 (10th Cir. 1998); Zombro v. Baltimore City Police Dep't, 868 F.2d 1364 (4th Cir. 1989). Other district courts within this circuit have followed that lead as well, finding that Congress' intent would be overridden if plaintiffs were allowed to bypass the administrative

process by litigating age discrimination claims under § 1983 without undergoing administrative exhaustion through the ADEA. Farmer v. Camden City Bd. of Educ., 2005 WL 984376 *8 (D.N.J. Mar. 28, 2005); Barlieb v. Kutztown Univ., 2003 WL 22858575 *4 (E.D.Pa. Dec. 1, 2003). The Court finds the reasoning of these appellate and district courts persuasive. Nor does the Supreme Court's recent holding in Fitzgerald v. Barnstable Sch. Comm., give the Court reason to find differently.  No. 07-1125, 2009 WL 128173 (U.S. 2009).

      In Fitzgerald, the Supreme Court looked to congressional intent to determine whether the existence of remedies under Title IX should foreclose the availability of § 1983 remedies for gender discrimination, and it found that Title IX did not preclude application of § 1983 to gender discrimination claims. Id. The Supreme Court stated that congressional intent to foreclose a remedy under § 1983 may be "inferred from the statute's creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Id. at *5. Because Title IX does not have such a comprehensive scheme, the Supreme Court ruled that it was not incompatible with § 1983 remedies. However, the ADEA, 29 U.S.C. § 633a(c)-(d), differs significantly from Title IX. The ADEA expressly states that "when the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced . . . ." Thus, the ADEA provides an express, private means of redress akin to the IDEA, which the Third Circuit has ruled forecloses the possibility of § 1983 suits. A.W. v. Jersey City Pub. Schs., 486 F.3d 791 (3d Cir. 2007). For these reasons, though the Third Circuit has not ruled on whether the ADEA forecloses the possibility of § 1983 suits, the Court finds that congressional intent would be best served by requiring that the ADEA's administrative

scheme be followed, and therefore that age discrimination suits be brought through the ADEA, rather than through § 1983.

Additionally, Plaintiff's age discrimination claim cannot be brought under Title VII. 42 U.S.C. § 2000e-2 provides that "it shall be an unlawful employment practice for an employer – to . . . discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." The statute does not address age discrimination. The ADEA, 29 U.S.C. § 623 (a)(1), instead, provides a similar prohibition against age discrimination. However, Plaintiff does not allege an ADEA claim.

Therefore, Plaintiff's age discrimination claims brought under § 1983 and Title VII must be dismissed.

**E. Retaliation Claims**

Last, Defendants argue that Plaintiff's retaliation claims must be dismissed because the time lapse between the filing date of her claims with the PHRC/EEOC and the adverse employment action is too great to constitute retaliation.

To state a claim for retaliation, Plaintiff must show "(1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005); Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004).

Defendants argue here that the causal connection element is missing due to the time lapse between Plaintiff's filings and the adverse employment actions. While in certain circumstances close temporal proximity between the protected activity and the adverse action may be

"unusually suggestive" so as to be sufficient on its own to establish the causation, Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), "the mere passage of time is not legally conclusive proof against retaliations." Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 894-95 (3d Cir. 1993); see also Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997).

In other words, causation is a context-specific inquiry requiring proof not available at the pleadings stage, and while temporal proximity may provide an inference of retaliation, it is not required. Fasold, 409 F.3d at 189-90. For example, "intervening antagonism or retaliatory animus" can augment a lack of temporal proximity to create an inference of causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). The Court need not indulge in an exhaustive discussion of the ways in which causation can be proven. Plaintiff has pleaded facts sufficient to make a showing of retaliation; she states that she filed a claim for discrimination with the PHRC and EEOC, was harassed and belittled thereafter, and eventually, was constructively discharged as a result.

Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claims is denied.

**CONCLUSION**

In conclusion, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's PHRA and age discrimination claims are dismissed. Plaintiff's gender discrimination claim for events occurring after the discrete employment actions of 2002 and Plaintiff's retaliation claims are not dismissed.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTINE E. MILES,** | : | |
| Plaintiff | : | Civil Action No. 1:08-cv-1561 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA** | : | |
| **DEPARTMENT OF CONSERVATION** | : | |
| **AND NATURAL RESOURCES, and** | : | |
| **JAY PARRISH** | : | |
| Defendants | : | |

## ORDER

**AND NOW**, on this 27th day of February 2009, upon consideration of Defendants' motion to dismiss (Doc. No. 6), **IT IS HEREBY ORDERED** that the motion is granted in part and denied in part. Plaintiff's age discrimination claims, PHRA claim, and § 1983 gender discrimination claims occurring on or before the 2002 move and demotion are **dismissed**. Plaintiff's retaliation, Title VII, and remaining § 1983 gender discrimination hostile work environment claims are **not dismissed**. Plaintiff is entitled leave to amend pursuant to Fed. R. Civ. P. 15(a).

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania